FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
04 May 2024 1:05 AM
Lucy H.Carrillo, Clerk of Court

cc:DKW/KJM/Filer (by email)

Mr. Leauma Ben Alefosio
Pro Se
P.O. Box 112
Pago Pago, AS 96799
684-782-2537 | 684-622-3657
leauma@yahoo.com

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LEAUMA BEN ALEFOSIO, | CASE NUMBER: 24-00196-DKW-KJM |
| Plaintiff, | |
| vs. | AMENDED CIVIL COMPLAINT |
| AMERICAN SAMOA GOVERNMENT | |
| Defendant(s). | |

NOW COMES Pro Se Plaintiff, Leauma Ben Alefosio, files this civil complaint against the above-referenced defendant and in support states as follows:

### I. STATEMENT OF JURISDICTION AND VENUE

The plaintiff brings this suit under 28 U.S.C. § 1331, Federal question, which provides a general grant of subject matter jurisdiction to federal district courts in "all civil actions arising under the Constitution, laws, or treaties of the United States." The federal question is based on the violation of the procedural due process clause of the 5th and 14th Amendments to the United States Constitution, Title 42 U.S.C. §1983, American Samoa Constitution Article 1 Section 2, the Administrative Procedures Act of 1969 (A.S.C.A. § 4.1001 et seq), American Samoa Code Annotated (A.S.C.A) and American Samoa Administrative Code (Regulations) (A.S.A.C) and the Government Tort Liability Act A.S.C.A. §§ 43.1201 et seq.

The venue is proper in this judicial district under Title 42 U.S.C. §1983, Title 28 § 1346 (b) and 28 U.S.C. § 1331.

AMENDED CIVIL COMPLAINT - 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II. PARTIES TO THE CASE

A. <u>Plaintiff:</u> is a resident of American Samoa and a former Investigator and Interpreter at the Office of the Public Defender. The Prose Plaintiff's address is P.O. Box 112, Pago Pago, AS 96799. <u>The plaintiff has an expressed constitutionally protected property interest right in continued employment to sue the defendant under Title 42 U.S.C. §1983 to recover backpay and associated employment benefits and damages for Breach of the covenant of good faith and fair dealing, Breach of Contract, Deprivation of Right to Procedural Due Process 42 U.S.C. § 1983, Tampering with or fabricating physical evidence, False Declaration, False Affidavit, Perjury, Abuse of Power, Abuse of Discretion, Misapplication of the Law, Malicious Abuse of Judicial Process, Violation of the Administrative Procedures Act, Violation of local statutes A.S.C.A and A.S.A.C and Violation of Due Process claims arising out of Wrongful Termination. The plaintiff also has a right to sue the defendant under Title 28 § 1346 (b) for Violation of the Government Tort Liability Act A.S.C.A. §§ 43.1201 et seq., also arising out of Wrongful Termination.</u>

B. <u>Defendant:</u> The American Samoa Government is a governmental body. The ASG employs approximately 6,500 employees who work in 33 departments, including the Office of the Public Defender. The defendant is represented by Deputy Attorney General Roy Hall of the Office of the Attorney General at P.O. Box 7, Executive Office Building, 2nd Floor, Pago Pago, AS 96799.

## III. FACTS

AMENDED CIVIL COMPLAINT - 2

1. On October 21, 2019, the plaintiff entered into a one-year employment contract with the American Samoa Government's Department of Human Resources to work as an Administrator. (**See Exhibit 1**)

2. In mid-November 2019, the plaintiff was transferred to the Office of the Public Defender via an effective inter-agency transfer request letter by Director Michael White dated February 10, 2020. (**See Exhibit 2**)

3. On February 10, 2020, the contract was amended to reflect the title change from Administrator to Investigator and transfer from the Department of Human Resources to the Office of the Public Defender. (**See Exhibit 3**)

4. In his inter-agency transfer letter dated February 6, 2020, Office of Public Defender Director Michael White writes, "Mr. Leauma's background, general work experience, and skillset provide the opportunity for this office to accomplish a tremendous amount of investigative casework, translator, and administrative support that wasn't always available given the limited experience in this arena of the criminal justice system." White quoted "Administrative Code §4.0313 (3) (b)(2) as it relates to inter-agency transfer which provides the "movement of a permanent employee from one position to another in the same class between agencies."

5. On April 1, 2020, Michael White altered the plaintiff's salary without notice to circumvent Governor Lolo's short-term contract conversion policy that allowed for a straight conversion of pay. Former Governor Lolo's conversion policy is similar to previous Governor Togiola's short-term conversion policy. (**See Exhibit** 4) This is reiterated in Governor Lemanu's Memorandum on contract employees. (**See Exhibit 5**) The rationale of the policy was to protect highly skilled ASG workers with advanced

AMENDED CIVIL COMPLAINT - 3

education and work experience, especially blood natives of American Samoa like the plaintiff. Shortly after Governor Lolo announced his policy to convert ASG short-term contract employees to career service, the plaintiff approached Director Michael White regarding his contract conversion. Michael White repeatedly lied to the plaintiff that he had not submitted the budget proposal.

6.  In early June 2020, the plaintiff discovered that the budget proposal had already been submitted by Michael White on April 1, 2020 and that his salary was reduced from $40,000.00 to roughly $30,000.00 annually. (**See Exhibit 6**) This salary adjustment was done without the plaintiff's knowledge.

7.  On June 16, 2020, the plaintiff approached Governor Lolo about the salary adjustment made by Director Michael White. Upon receiving the plaintiff's complaint, Governor Lolo requested from the plaintiff copies of his credentials, including his resume, previous employers' reference letters, and copies of college degrees and training certificates, etc.

8.  On June 24, 2020, upon reviewing the plaintiff's credentials, Governor Lolo approved the plaintiff's contract conversion to career service with a pay increase from $40,000.00 to $45,000.00 annually. The Public Defender's Office had enough surplus allocated for the position to cover the $5,000.00 annual salary increase. Governor Lolo increased the plaintiff's salary as he felt the plaintiff was underpaid and informed the plaintiff that he was exactly what the Office of the Public Defender needed. The plaintiff holds a BA in History and Political Science and an MS degree in Criminal Justice Administration both from Chaminade University of Honolulu and a former law student.  The plaintiff had previously worked for the ASG at the Community College from 2003-2006 and as a

Probation Officer with the Hawaii State Judiciary and also in Colorado Springs, among many other pertinent work experiences.

9. On September 9, 2020, Michael White signed the plaintiff's conversion paperwork. After he signed the paperwork, Mike said to the plaintiff, "I wished you had approached me first." The plaintiff reminded Michael White that he had approached him several times.

10. On October 27, 2020, Budget Director Kathy Saelua signed the conversion paperwork.

11. In late October 2020, when the plaintiff applied for a loan at DBAS the loan officer informed him that his employee 303 Form was rather strange because she had seen other forms of ASG employees who had their contracts converted to career service without a probationary period. That prompted the plaintiff to investigate this classification issue that perhaps other ASG employees had their contracts converted straight to career service without serving a probationary period, mainly those who supported the Lemanu and Talauega's political team. At this point, Lolo's Administration powers had slowly diminished and those working in government who advocated for Lemanu's political team were starting to assert their influence. From that point forward, the plaintiff suspected Michael White would try to employ a tactic to tamper with his employment.

12. Shortly after Mike signed the conversion paperwork, the plaintiff suffered the following: (1) reduction in job responsibility; (2) reassigned to do menial or degrading work; (3) forced to share an office space with another staff without notice; (4) suffered harassment or humiliation by the employer calculated to encourage resignation; (5) threatened to get transferred; (6) have duties and responsibilities reassigned to a less qualified staff; (7) employer withheld information and tools necessary to perform job duties and responsibilities; (8) not included in Fono confirmation hearing of Director and other

meetings; (9) employer failure to acknowledge several requests to establish structure in workplace created hostile environment; (10) avoided suggestions to have staff meeting; (11) employer declined petitioner's suggestions to improve servicing clients; (12) experienced unlawful reduction of hours; (13) unfair treatment relative to other staff; (14) employer enlisted other staff in his effort to terminate petitioner's employment using petitioner's high salary as motive to cause injury; (15) coerced petitioner to ask clients to take offers from the AG's office without investigation; (16); subject to verbal insults causing humiliation; (17) employer employed personal attack on petitioner's character; (18) employer redirected clients to see other less qualified staff; (19) and Mike White secretly met with Governor Lemanu and using Folole Fagaima's influence (known avid supporter and relative of Lemanu and Talauega's campaign) to garner Governor Lemanu's support for termination; and (20) had role downplayed to only "Translator" and ignoring petitioner's other roles as investigator and administrator indicated in Micheal White's inter-agency transfer letter.

13. On March 31, 2021, Michael White threatened to transfer the plaintiff. (**See Exhibit 7**)

14. In early March 2021, the plaintiff approached Director Michel White regarding the 2022 FY budget proposal because he had feared losing his job considering he was serving a 1-year probationary period. And especially because Michael White was still upset when the plaintiff approached the Governor. Director White informed the plaintiff that "he'll let him know when the budget is submitted and if there were any changes." Then he said something that concerned the petitioner, "Remember that stunt you pulled when you approached Lolo last year?"

15. On April 26, 2021, the plaintiff asked to accompany Director Mike White to his FY 2022 Budget meeting with Governor Lemanu. Director Michael White lied and said he was going by himself.

16. On April 27, 2021, the plaintiff discovered that Michael White's secretary Folole Fagaima had accompanied White to the "budget meeting." Folole admitted telling Governor Lemanu and the Budget Office that the petitioner was overpaid for just being an interpreter. The plaintiff then approached Director Michael White on why Folole was invited to the meeting because she was an avid supporter of the Lemanu and Talauega political team and also related to both Governor Lemanu and the Chief of Staff. Michael White lied and said she did not say anything. He also reminded the plaintiff again, "Remember that stunt you pulled seeing Lolo last year?" The plaintiff pleaded with Director Michael White not to temper his salary as it was the lifeline of his family and was open to transfer. Director Mike said the meeting was simply about "moving some numbers around." Plaintiff then asked, "Should I be worried about my salary?" and he said, "No, I'll let you know if anything comes up." Michael White also informed the plaintiff that "he was overqualified for the job and the meeting with Governor Lemanu was about moving some numbers around."

17. On April 28, 2021, after approaching Secretary Folole about the meeting, the plaintiff sent an email to the Governor's Office requesting a meeting with Governor Lemanu. The plaintiff received an email from the Governor's office that Lemanu would be busy the next few weeks reviewing FY 2022 budget proposals. (**See Exhibit 8**)

18. On May 3, 2021, the plaintiff received a termination letter of his employment. (**Exhibit 9**) The letter is dated April 30, 2021, from the Director of the Department of Human

AMENDED CIVIL COMPLAINT - 7

Resources. The reason stated in the letter is "unsatisfactory performance, per several verbal counseling sessions with the Public Defender." There was no performance evaluation, letter of reprimand, or letter of warning to corroborate the reason for termination. Further, there was no "recommendation for termination letter" to affirm the employment termination. The letter states, "As a career service employee serving a probationary period, the plaintiff has no right to appeal." Moreover, the letter reads "Thank you for your service with the Department of Human Resources." After reviewing the letter, the plaintiff immediately called DHR Director Lynn Alaimalo Pulou. Lynn then invited the plaintiff to come by her office.

19. When the plaintiff arrived, he was redirected to speak with Deputy Max Tuitele instead. Max Tuitele said Director Mike spoke with Director Lynn Alaimalo a few days prior. Deputy Max Tuitele also said Michael White had already submitted a recommendation in writing. The plaintiff then requested a copy of the recommendation letter. Deputy Tuitele then said the letter was in the personnel file and that he would get a copy to the petitioner later. Then the plaintiff provided his email address to Max Tuitele to email a copy of the recommendation letter. But Tuitele never sent a copy of the recommendation letter to the plaintiff.

20. On May 5, 2021, the plaintiff hand-delivered his letter to DHR alleging wrongful termination and his right to appeal. On the same day, the DHR Director called the plaintiff and asked to meet with her at her office and she presented an alternative for the plaintiff to transfer to the Department of Human Resources presumably to keep quiet. Lynn informed the plaintiff that, "the decision to terminate came from upstairs," which meant it came from the Governor's office. The plaintiff informed Lynn that he needed

AMENDED CIVIL COMPLAINT - 8

time to consider the alternative, however, also needed to resolve the matter and inquired to speak with the Personnel Advisory Board. Director Alaimalo later rescinded her offer citing a lack of funds. (**See Exhibit 10**)

21.  On May 14, 2021, the plaintiff filed an appeal with the Office of the Administrative Law Judge.

22. On May 23, 2021, the plaintiff called "Junior Suisala" a former Office of the Public Defender employee whose employment was terminated by Michael White in 2019. Mr. Suisala claimed Mike was a conniving man. He said he was caught off-guard when Mike fired him because he had done so much for the office. However, he said when Douglas Fiaui was the Director, Mike told him he would fire him if Douglas left. Mr. Suisala said Mike was jealous of him when then PD Douglas Fiaui sent him off-island for training. When he returned home, he became more engaged at work and vocal in decisions on cases and office operations. He said he had a newfound knowledge from his off-island training. It inspired him to create change for the better. He said he was surprised when Mike White fired him after so many years he worked at the Public Defender's Office. He said Michael White fired him because he "abandoned his position." But he said he got paid on the days Michael White claimed he "abandoned his position." Mr. Suisala has been working with the Office of the Public Defender for over five years. Mr. Suisala also said that Mike's secretary, "Folole" o le ka'i ga o le afi" in Samoan which translates to mean, "Folole" is the culprit at the Office of the Public Defender.

23. Throughout his tenure, Mike has said the following comments: (1) that a Samoan student who got accepted to Harvard was due to his status as a minority; (2) that the plaintiff did not know how to write an investigation report; (3) that he should not go to Court like the

AMENDED CIVIL COMPLAINT - 9

Attorney General; (4) "that he has no use for the plaintiff because he couldn't convince his relative to take the offer from the Attorney General's office; (6) that plaintiff was old and looked old; (7) that he'd rather not do anything and collect his $70,000.00 salary and enjoy life in the islands.

24. On December 4, 2021, having felt guilty about the whole ordeal, the Director of Human Resources Lynn Pulou Alaimalo sent the plaintiff a message on Facebook asking to see if the plaintiff was still working at ASCC. Shortly thereafter the plaintiff called her cell phone. The petitioner informed her that he was still an Adjunct at ASCC. The plaintiff also told her, "You and I both know that I was wrongfully terminated. That there was no absolute evidence to support my termination." She remained quiet and asked if the plaintiff wanted a job nearer where he lived.

25. On April 24, 2022, the plaintiff spoke with former Governor Lolo again and he advised the plaintiff to aggressively pursue the matter in court because what they did was wrong. Governor Lolo also said the "rollback" policy was so wrong that a lot of people were affected by it. He was concerned about those employees with young children. Governor Lolo echoed the sentiments of the US Supreme Court based on wrongful termination cases in that it threatens the livelihood of families. Governor Lolo said a majority of those people could not afford an attorney or know very little to even appear pro se to fight their matter in Court.

## IV.  PROCEDURAL HISTORY

On May 14, 2021, the plaintiff appealed the Department of Human Resources' decision to terminate his employment by way of a letter with the Office of the Administrative Law Judge alleging wrongful termination, violation of due process, and retaliation. On June 1, 2021, the

AMENDED CIVIL COMPLAINT - 10

plaintiff filed more claims and arguments, with details of several ASG unlawful employment practices employed by Michael White and DHR, to be added to his original complaint. In addition, on June 1, 2021, the plaintiff filed a Motion for Summary Judgment. On June 21, 2021, the defendant filed a Motion to Dismiss. On July 9, 2021, the plaintiff filed a Request to Deny the respondent's motion to dismiss. On August 10, 2021, the plaintiff filed an addendum to his original complaint articulating the wrongful termination and violation of due process arguments. On August 11, 2021, the defendant filed an Affidavit provided by the Director of Human Resources, Lynn Pulou Alaimalo, in opposition to the plaintiff's motion for summary judgment. **The Affidavit of Lynn Pulou Alaimalo did not contain a recommendation letter by Michael White to terminate employment**. On August 12, 2021, a hearing was conducted on the plaintiff's Motion for Summary Judgment, the defendant's Motion to Dismiss Summary Judgment, and the entire case. After the hearing, the court scheduled a continuance for August 20, 2021.

On August 18, 2021, the defendant filed an Affidavit of Michael White in opposition to the plaintiff's Motion for Summary Judgment. On August 20, 2021, the ALJ upheld the defendant's request to object to the filing of the petitioner's "Amended Complaint and Addendum to Summary Judgment" for failure to request leave filed on August 10, 2021, which articulates the violation of due process and wrongful termination claims. On March 23, 2022, the OALJ rendered a decision on (1) a Motion to Dismiss, (2) a Motion for Summary Judgment, and (3) a Request to Dismiss. In her Administrative Ruling on March 23, 2022, the ALJ buried the plaintiff's due process argument of his "property" and "liberty" interest in continuing employment in the footnote of her ruling and focused her analysis on the "employment classification" argument and granted the plaintiff Leave of Court to amend his appeal. On April

AMENDED CIVIL COMPLAINT - 11

21, 2022, the plaintiff filed his Motion for Leave to Amend the Complaint and Amended Complaint as ordered. The amended complaint was filed in conjunction with (1) Affidavit of Leauma Ben Alefosio; (2) OFFER OF PROOF NUMBER ONE; (3) OFFER OF PROOF NUMBER TWO; (4) MOTION FOR LEAVE; (5) FILING OF EXHIBITS TO SUPPORT OFFER OF PROOF ONE (6); FILING OF EXHIBITS TO SUPPORT OFFER OF PROOF TWO.

On May 13, 2022, the plaintiff filed a Motion for Judgement on the Pleadings. On July 28, 2022, the defendant through attorney, Christa B. Nafstad, filed a Motion for Continuance alleging she did not receive a copy of the Motion for Judgment on the Pleadings. On August 2, 2022, a hearing was held on the plaintiff's: (1) Motion for Judgment on the Pleadings; (2) Motion for Leave, and (3) Amended Appeal. In her Administrative Ruling on August 18, 2022, the ALJ granted the plaintiff's motion for leave to amend the complaint and his proposed amended complaint and denied the plaintiff's Motion for Judgment on the Pleadings. The ALJ then allowed the defendant to file a late response to the plaintiff's amended complaint. The plaintiff's proposed amended complaint mirrors his "Amended Complaint and Addendum to Summary Judgment" filed on August 10, 2021. During the August 2, 2022 hearing, the ALJ seemed anxious and conflicted with something inappropriate she had done and was hostile toward the plaintiff. The ALJ then mumbled what supposedly purported to be a legal issue under her breath and proceeded to schedule a Pre-Hearing Conference for October 25, 2022. The ALJ seemed unsure about the legal issue because she said it nonchalantly, although it was unclear, to begin with. She also said she might need to remand the case back to DHR.

On October 20, 2022, suspecting the ALJ would try to manipulate the process again as she did with her Administrative Ruling dated March 23, 2021, when she left out the due process

AMENDED CIVIL COMPLAINT - 12

argument of "property" and "liberty" interest in continuing employment, the plaintiff filed a Motion to Supplement the Record. On October 21, 2022, the plaintiff filed an Amended Motion to Supplement the Record. The plaintiff's Motion for Continuance was heard on October 25, 2022, instead of the Pre-Hearing Conference. During the hearing on October 25, 2022, the defendant's attorney Roy Hall Jr. suggested to the tribunal to set a Trial Date. The ALJ then asked the plaintiff for his remarks, and the plaintiff informed the ALJ and the defendant's attorney that this matter should not go to trial. The ALJ asked the defendant's attorney if he had any objections to the plaintiff's Motion to Supplement the record. At which point, the defendant's attorney Roy Hall, said "No objections." ALJ then proceeded to remind Attorney Hall by pointing out a particular law ASCA 4.0608, she did not say what it was, but it is under "New Evidence Issues Limited." The plaintiff then interjected and inquired as to why the ALJ had to reaffirm after the defendant's attorney had already said no objections. At this point, the ALJ said to the effect that her authority should not be interrupted by either party. The ALJ then informed both parties that the legal issue was "whether the plaintiff was a career service employee" which was contrary to what she had said during the August 2, 2022, hearing. The ALJ then commented that "she intends to end the case before the year ends" and proceeded to schedule the Pre-Hearing Conference for November 21, 2022.

On August 22, 2022, the defendant filed an Answer and an Amended Answer on August 23, 2022, to the plaintiff's Amended Complaint filed four months prior on April 21, 2022. On September 9, 2022, the defendant's attorney, Bryan Randolph, filed a "Certified Administrative Record" with the Office of the Administrative Law Judge. After almost two years since the plaintiff requested a copy of the recommendation letter from DHR Deputy Director Max Tuitele on May 3, 2021, a letter purported to be a recommendation letter dated April 8, 2021, written by

AMENDED CIVIL COMPLAINT - 13

Michael White was attached to the "Certified Administrative Record." **The letter is titled "Transfer Request for Ben Leauma Alefosio" not a "Recommendation for Termination." Moreover, the letter contained several conflicting information.**

During the Pre-Hearing Conference held on November 21, 2022, the plaintiff informed ALJ that this Court should not proceed to trial based on a bogus legal issue "whether the plaintiff was a career service employee." The plaintiff also informed the ALJ that the crux of the issue, which is the real legal issue both the Administrative Law Judge and the defendant's attorney avoided is "whether the plaintiff had "property" or "liberty" interest in continuing employment and that the answer a resounding "yes." The plaintiff also informed the ALJ that the defendant failed to provide credible evidence to support the reason for termination. In its Pre-Trial Statement, the defendant writes on page 3 lines 1-2, "DHR Director decided to terminate Mr. Alefosio's position." This is contrary to what DHR Director Lynn Alaimalo told the plaintiff on May 5, 2021, that "the decision to terminate came from upstairs" meaning the Governor's Office.  Further, in the respondent's Pre-Trial Statement, the respondent writes, in lines 3-4 that the plaintiff was served with "an amended Termination of Employment letter May 3, 2022. This is false. The plaintiff was never served with two copies of the termination letter. The plaintiff however received the termination letter on May 3, 2021. The termination letter is dated April 30, 2021.

In addition, the plaintiff also addressed his Amended Motion to Supplement the Record with the ALJ during the Pre-Trial Hearing by pointing out that the reason for the request was to illustrate how the case was unfairly orchestrated to benefit the defendant and to avoid addressing the real legal issue which would allow the plaintiff his entitlement to backpay. The plaintiff also informed the ALJ that the matter was with the High Court as of November 17, 2022, and that the

OALJ no longer had jurisdiction over the case. The ALJ then proceeded to schedule a status hearing for January 17, 2023.

On November 17, 2022, the plaintiff filed his original Extraordinary Writ of Mandamus petition with the Trial Division of the High Court under docket number HCCA-037-2022 by submitting the following: (1) Petition for Writ of Mandamus and Injunctive Relief; (2) Memorandum of Points and Authorities in Support of the Writ of Mandamus and Injunctive Relief; and (3) Order for Writ of Mandamus. On November 23, 2022, the plaintiff filed an Amended Memorandum of Points and Authorities in Support of the Writ of Mandamus and Injunctive Relief.  On December 06, 2022, the Real Party in Interest, Marie Ala'ilima, in her capacity as ALJ, filed a response to the plaintiff's amended petition for extraordinary relief. On December 8, 2022, the defendant filed a response to the plaintiff's Amended Petition for Extraordinary Relief. On December 9, 2022, the plaintiff filed a Motion to Disqualify Judge Fiti Sunia as a presiding judge under A.S.C.A. 3.1007 (a) and an Affidavit in support of. The plaintiff objected to Judge Sunia presiding over the matter because his first cousin is a partner in the law firm of the attorney Lornalei Meredith, representing the Real Party in Interest ALJ Marie Ala'ilima. On December 14, 2022, the plaintiff filed a Reply to the defendant and Interested Party's Answer to the Amended Petition for Extraordinary Writ of Mandamus. In addition, the plaintiff filed 33 Exhibits at the Trial Division on December 14, 2022. On January 10, 2023, the defendant filed a "Response to Petition for Extraordinary Relief." On January 11, 2023, the plaintiff filed a Motion to Oppose or Strike the Filing of the defendant's Response to the Petition for Extraordinary Relief. On February 22, 2023, the defendant filed a Motion to Dismiss the plaintiff's Extraordinary Writ of Mandamus. On March 1, 2023, the plaintiff filed a Request to Deny the defendant's Motion to Dismiss Petition for Extraordinary Relief.

AMENDED CIVIL COMPLAINT - 15

On March 6, 2023, a hearing was held for the plaintiff's Motion to Disqualify Judge Fiti Sunia from presiding over the case. The Motion to Disqualify was dismissed and a hearing was scheduled for the defendant's Motion to Dismiss on April 14, 2023. On April 21, 2023, the plaintiff filed a Motion to Postpone the Ruling to allow the plaintiff to supplement extraordinary relief. On May 9, 2023, the defendant filed an "Opposition to Plaintiff's Motion to Postpone Ruling." On May 17, 2023, a hearing was scheduled for the plaintiff's Motion to Postpone. On May 18, 2023, the plaintiff filed a "Motion to Correct an Error to preserve the argument on appeal" arguing that the OALJ has already made a "final decision" and a remand to OALJ would serve no purposeful meaning. The plaintiff argued in Court on May 17, 2023, that what the ALJ did constitutes what the Bennet Court calls a final decision. During the hearing, the Trial Court Judge Fiti Sunia asked the plaintiff if the law he had introduced was new. Hence, the reason why the plaintiff filed his motion to correct the error. On June 13, 2023, the Trial Court rendered a decision Granting the defendant's Motion to Dismiss on case number HCCA-037-2022. The plaintiff was served a copy of the Order on Wednesday, June 21, 2023, at around 5 PM, approximately 8 days after the Order was entered. The plaintiff's Motion to Correct Error was ignored by the Trial Court.

On June 23, 2023, the plaintiff filed a "Request for an Extension to File Appeal." On July 3, 2023, the plaintiff appealed the decision of the Trial Court on his extraordinary relief petition. The plaintiff filed the following pleadings with the Appellate Court under docket number AP-01-2023: (1) a Motion for Stay or Injunction Pending Appeal; (2) Notice of Appeal of the Trial Division Order granting the defendant's Motion to Dismiss the Writ of Mandamus; (3) Motion for Leave to Proceed in Forma Pauperis; and (4) Financial Affidavit in support of Motion for Leave to Proceed in Forma Pauperis. On July 3, 2023, the Appellate Court denied the petitioner's

AMENDED CIVIL COMPLAINT - 16

Motion to Appeal the Trial Division's Order dated June 13, 2023, citing Appellate Court lacks subject matter jurisdiction.

On July 7, 2023, the plaintiff filed a Motion for Relief from Judgment and reconsideration of the Appellate Court's Order on Writ of Mandamus dated July 3, 2023. On July 11, 2023, the Appellate Court once again denied the plaintiff's appeal on Writ of Mandamus citing the same reason in its Order on July 3, 2023, that the Appellate Court lacks subject matter jurisdiction for failure to comply with the requirements of ASCA 43.0802 and that the T.C.R.C.P do not apply in the Appellate Division. On July 14, 2023, the plaintiff filed the following pleadings under docket number AP-04-2023: (1) a Notice of Interlocutory Appeal with the Appellate Division of High Court of American Samoa under provisions of the Administrative Procedures Act 4.1040 et seq. sections 4.1041 through 4.1044 from the Office of the Administrative Law Judge; (2) Motion to Supplement the Record and Transmission of Record; and (3) Request for Appellate Court to Receive Briefs and to Hear Oral Argument.

On August 10, 2023, the plaintiff filed his Appellate Brief for his interlocutory appeal at the Appellate Court of American Samoa. On the same date, the High Court Clerk informed the plaintiff to expect a decision from the panel. On August 17, 2023, the plaintiff filed a Notice of Oral Argument Hearing. On August 25, 2023, the plaintiff filed a Motion for Leave to File an Interlocutory Appeal and to Hear Oral Arguments.  On November 9, 2023, the plaintiff filed a Motion for a Court Order Directing Settlement or Resolution. On November 9, 2023, the plaintiff filed an affidavit in support of the Court Order directing settlement or resolution. On November 9, 2023, the plaintiff filed a Notice of Hearing for the Plaintiff's Motion for a Court Order Directing Settlement or Resolution. On November 28, the plaintiff filed an Addendum to the Interlocutory Appeal introducing the Collateral Order Doctrine arguing that the ALJ's

AMENDED CIVIL COMPLAINT - 17

decision on the plaintiff's Motion for Summary Judgment was separable from, and collateral to, rights asserted in the action," but also, " *too important* to be denied review" otherwise his right to backpay would be lost.

On February 1, 2024, the plaintiff filed a Motion for a Status Hearing. On March 1, 2024, the plaintiff inquired about the status of his motions filed with the High Court's Clerk. The Clerk said that the Clerk of the Courts should respond with a date for Oral Arguments. On March 10, 2024, the plaintiff received a phone call from the High Court Clerk that the Chief Justice had issued a memorandum. In the Chief Justice's memorandum dated March 23, 2024, to the Clerk of the Courts, it states, "Your office shall not accept any more filings from Mr. Alefosio under docket AP. No. 04-2023. The High Court failed to address the plaintiff's Request for Oral Arguments based on the Appellate Brief filed on August 10, 2024, and the addendum to the interlocutory appeal. On March 27, 2024, the plaintiff contacted the defendant's attorney Roy Hall seeking an opportunity for settlement as the High Court has been compromised. From March 27, 2027, through April 10, 2024, the plaintiff and the defendant's attorney engaged in settlement negotiations that did not fall through. The plaintiff therefore filed with this Court.

<u>V. STATEMENT OF CLAIM</u>

1. <u>WRONGFUL TERMINATION AND VIOLATION OF DUE PROCESS</u>

To maintain a due process claim, the Plaintiff must have been deprived of a constitutionally protected property interest in continued employment with the American Samoa Government's Office of the Public Defender. Section 1983 provides an individual the right to sue state government employees and others acting "under color of state law" for civil rights violations. For a federal cause of action to arise for improper termination of employment, the plaintiff must allege a violation of the due process clause under Title

AMENDED CIVIL COMPLAINT - 18

42 U.S.C. §1983. To sustain a claim for violation of federal due process rights, the discharged employee must first establish that he had a property interest in continued employment. After establishing the existence of a property right, the discharged employee must demonstrate that she was discharged without the procedural protections accorded by the due process clause. At a minimum, there has to be a <u>prior notice</u> of the discharge and the <u>reasons for it</u>, and a <u>meaningful opportunity to respond</u> before termination.

The Administrative Procedures Act of 1969 (A.S.C.A. § 4.1001 et seq) establishes the general procedures that all A.S.G. departments, boards, and commissions must follow when empowered to act as agencies with rule-making or contested case decision-making authority. <u>Local Statute 7.0801 under termination of employment states</u> ASG employees in the career service may be demoted, suspended, or removed for below-standard job performance, misconduct on the job, misconduct off the job which reflects adversely on the government, conviction of a felony, sentenced to prison for 30 days or more upon conviction of a crime, or violation of standards established administratively which govern employee conduct and deportment, including but not limited to, the proper use and penalty for misuse of government property.

The plaintiff was a career service employee who had been working for the American Samoa Government's Office of the Public Defender as an Investigator and Interpreter for approximately two years. The defendant, ASG, failed to follow the proper termination procedure and policy stipulated in the Administrative Procedures Act, American Samoa Code Annotated (A.S.C.A), American Samoa Administrative Code (A.S.A.C), ASG

AMENDED CIVIL COMPLAINT - 19

Policy and Administration Manual, and ASG handbook when terminating the plaintiff's employment based on the following:

**a. The plaintiff was not afforded a "Notice" and "Opportunity to be heard" before the adverse action.**

On May 3, 2021, the plaintiff was caught off-guard when he received a letter on his desk when he returned from lunch break. A few days prior, on April 27, 2021, Micheal White told the plaintiff that he had a meeting with the Governor the next day to go over the budget proposal for FY 2022. The plaintiff then asked to be included in the meeting. Michael White lied and said he was going alone. However, he took his secretary, Folole who admitted telling Governor Lemanu and the Budget Director that the plaintiff was overpaid for being just an interpreter. After confronting Folole, the plaintiff approached Michael White on the same day and asked why Folole was invited to the meeting. The plaintiff suspected Michael White used Folole to convince Governor Lemanu to terminate his employment. The plaintiff informed Director Michael White that Folole should not have been included because she was a known political supporter of Lemanu's political team. Mike then lied again and said she did not say anything. The plaintiff then asked to meet with Governor Lemanu and was told he was "busy." A few days after the so-called "budget meeting" the plaintiff received his termination letter on May 3, 2021. The letter is dated April 30, 2021, a few days after the "budget meeting." The plaintiff then immediately called DHR Director Alaimalo and was invited to come over to her office. However, when the plaintiff arrived, he was asked to meet with Deputy Director Max Tuitele instead. The plaintiff then requested a copy of the recommendation letter but never received one.

AMENDED CIVIL COMPLAINT - 20

**b.  The decision to terminate was capricious and arbitrary**

Under the ASG Personnel Police and Administration Manual Section 10.8 on

Termination for Cause Subsection A 2, "Upon receipt of the written justification

recommending the removal of an employee, the Director shall give <u>careful consideration</u>

<u>to such recommendation and all background information of record.</u> In this connection, the

Director is expected to consult with the recommended operating official concerned."

There was no careful consideration done in the present case, it was capricious and

arbitrary, a rush to judgment, certainly.

Under ASG Personnel Policy and Administration Manual Section 10.8 for

Termination for Cause Subsection A (1): Removal shall be recommended to the Director

of the DHR, by the employee's agency head <u>in writing</u>, supported by a written account of

the circumstances and events underlying the recommendation including performance

evaluation and or disciplinary letters 2) Upon receipt of the written justification

recommending the removal of an employee, the Director shall give <u>careful consideration</u>

<u>to such recommendation and all background information of record.</u> In this connection, the

Director is expected to consult with the recommended operating official concerned. 3)

The Director, if he/she considers the recommendation to be reasonable, shall advise the

employee in writing of the charges brought against him. This ASG DHR policy is

stipulated in the Tauai case under the <u>three-part administrative procedure</u>. Tauai v.

American Samoa Gov't 1 A.S.R. 3d 64 (Trial Div. 1997).

The American Samoa Government's Department of Human Resources did not

follow the 3-part administrative procedure when terminating the plaintiff's employment.

AMENDED CIVIL COMPLAINT - 21

There was simply no "prior notice" or "opportunity to be heard" before the adverse action.

### c. Plaintiff's property interest in continuing employment

The Supreme Court has determined that a public employee has a protected property interest in continued employment by the government. The US Constitution's 14th and 5th Amendments and American Samoa's Constitution Article 1 Section 2 state "No deprivation of life, liberty and property without due process."  The Governor of American Samoa has general supervision and control of all executive departments, agencies, and instrumentalities of the Government, personnel decisions are subject to his direction as long as his actions are by applicable territorial and federal laws and rules. Rev. Const. Am. Samoa. Art. II § 7; A.S.C.A. § 7.0110; A.S.C.A. §§ 4.0102, 4.0111(b). Sala v. American Samoa Government, 21 A.S.R.2d 14 (1992). The judiciary must not substitute its judgment for that of the executive branch on what is in "the best interest of the government."  A.S.C.A. § 7.0211.

In 2020, the petitioner's contract was converted to career service under Governor Lolo's conversion policy and ASCA 7.0207 a (2) which acquired all necessary signatures from Governor Lolo, then-Attorney General, HR Director, Budget Director, and Public Defender Director Michael White. Such transaction reinforces intent for long-term or permanent employment status. Governor Lolo's conversion policy is similar to former Governor Togiola's.

Moreover, the plaintiff had already worked at the Office of the Public Defender for approximately two years. The plaintiff was transferred from the Office of the Department of Human Resources to the Office of the Public Defender via Director

AMENDED CIVIL COMPLAINT - 22

Michael White's inter-agency transfer letter under Administrative Code §4.0313 (3) (b)(2) which provides the "movement of a permanent employee from one position to another in the same class between agencies." Michael White writes in his letter, "Leauma's background, general work experience, and skillset provide the opportunity for this office to accomplish a tremendous amount of investigative casework, translator, and administrative support that wasn't always available given the limited experience in this arena of the criminal justice system." These are well documented in the plaintiff's Office Personnel file.

**d.  Duty to investigate referral for termination**

It is the sole obligation of the human resources department to investigate a supervisor's referral for termination. A.S.C.A 7.0110 (5) requires the Director of Human Resources to investigate a referral for employment termination.

The defendant never really bothered to do an investigation. Their actions were purely intentional and deceitful. Two years after the employment termination, the defendant filed at the Office of the Administrative Law Judge what purported to be a recommendation letter written by Michael White dated April 8, 2021, in the "Administrative Record.". The letter states that it was a Request to transfer Leauma Ben Alefosio and NOT a Recommendation to terminate employment. The DHR concealed this evidence for two years. The letter also contains false information. (**See Exhibit 11**) The defendant's entire case is marred by fraud and misrepresentation of information. The defendant knew that the date of the original termination letter of April 30, 2021, was too close to when the "budget meeting" occurred then fabricated another termination letter

dated May 3, 2021, that the plaintiff never received and placed it in the "Administrative Record."

e.   **Termination lacked a recommendation letter, performance evaluation, letter of reprimand or warning**

ASG Personnel Policy and Administration Manual Section 12.3 under contents of OPF (Official Personnel Folder) and the contents of the OPF for each ASG employee should include (1) Performance Ratings or Evaluation; and (2) Letters of Caution, Warning, Reprimand, and similar disciplinary. The ASG Personnel Policy and Administration Manual Section 5.3 subsection A. 2. requires evaluations of ASG Employees. Moreover, ASCA 7.0211 (c) to wit, "When considered appropriate, separation during the probationary period shall be recommended in writing to the Director of Manpower Resources by department heads or other authorized operating officials, giving the reason for such recommendation." This is also mentioned in the ASG Personnel Policy and Administration Manual Section 7.3 on Involuntary Separation, part B on Probationary Employees, subsection 1. This is also under the following local statutes: 4.0248 "performance standard" and 4.2119 "career service" and 4.2147 "performance rating" and 4.2163 "Rating."

The termination letter states that the reason for employment termination is "unsatisfactory performance" and yet there is no record of any performance evaluation, letter of reprimand, or warning in the plaintiff's Official Personnel File as stipulated in the ASG Policy Manual and local statutes to corroborate termination. There was no statutory required recommendation letter for termination either.

f.   **The "unsatisfactory performance" was a pretext for wrongful termination.**

The real reason the plaintiff was terminated was because the plaintiff caught his supervisor Michael White lying when he altered his salary without notice. Initially, Michael White retaliated by limiting the duties and responsibilities of the plaintiff, threatening to transfer the plaintiff, allowing another less qualified worker to share an office with the plaintiff without notice, downplaying the plaintiff's role as only an "interpreter," let the plaintiff do menial work after Governor Lolo converted the plaintiff's contract to career service and raising his pay salary from $40,000.00 to $45,000.00. The reason why the defendant concealed the so-called "recommendation letter" was because it was a recommendation to "transfer" not "terminate" employment. Secondly, Michael White lied in his letter. He wrote, "Governor Lolo raised the plaintiff's salary from $28,000.00 to $45,000.00."

g.  **Violation of Statutory Requirement of Notice before altering pay or salary**

Local statute and policy as well as the FLSA forbid an employer from altering an employee's pay without notice. The ASG employment policies and procedures must be consistent with federal laws under the FLSA, Wage and Hour Division of the Department of Labor, EEOC, and Equal Pay Act, etc. The plaintiff approached former Governor Lolo in June 2020 because Michael White defied the contract conversion policy and altered his salary without notice. The plaintiff discovered after retrieving records from the Budget Office that Michael White had reduced his salary in the 2021 FY Budget. Governor Lolo's conversion policy allowed for a straight conversion of pay. The plaintiff was already getting paid $40,000.00. Michael White reduced it to approximately $30,000.00. In his affidavit filed with the OALJ, he wrote, "In early April 2020, the Office's FY 2021 budget proposal had not yet been prepared." However, the record revealed that it was submitted

by Michael White on April 1, 2021. Michael White also lied in his affidavit that "the plaintiff drafted the inter-agency transfer letter." Michael White also lied in his "Request to Transfer Letter" that the plaintiff's salary was increased from $28,000 to $45,000 after conversion. The two main reasons the defendant withheld this evidence for two years is because it is a letter to "transfer" not "terminate" employment and secondly, it contained false information. This letter surfaced after two years in the "administrative record" after the defendant had already misled the plaintiff about the letter and its content.

With all of the above violations, the plaintiff is entitled to immediate restoration of his back pay and employment benefits which include annual and sick leave, retirement, social security, retirement, etc.

2. <u>Malicious Abuse of Judicial Process and Violation of the Administrative Procedures Act</u>

"To succeed on a claim for malicious abuse of process, a plaintiff must demonstrate some coercive or illegitimate use of the judicial process." The position of the Administrative Law Judge was created by statute under the Administrative Procedures Act statute § 4.1001. The *American Samoa* Administrative Code is a collection of rules that have been promulgated under the ***Administrative Procedures Act***. An administrative rule made under statutory authority is presumed constitutional. Constitutional statutory authority is always paramount to administrative rule authority. **One of the authorities transferred to the ALJ was the "Restoration of Rights."** The ALJ has a proscribed duty to restore the petitioner's right to back pay under legislative statute §4.0902 (k) *Restoration of Rights*. "Any employee, when fully reinstated after appeal, shall be guaranteed all employee rights and benefits, including back pay, sick leave, annual leave accrual, and retirement."

AMENDED CIVIL COMPLAINT - 26

A.S.C.A § 4.0603 (c ) states: (c) The Administrative Law Judge shall have the <u>power and authority to affirm, reverse, modify or remand the decision or order of an agency</u> if it finds that such order or decision is: (1) <u>outside the range of discretion delegated to the agency by law</u>;(2) <u>inconsistent with an agency rule, official position, or prior practice unless the agency explains the inconsistency by stating facts and reasons which demonstrate a rational basis for the inconsistency</u>;(3) <u>in violation of an applicable statutory provision</u>; or (4) <u>unsupported by substantial evidence in the agency record</u>. *<u>Substantial evidence exists</u> when the agency record, viewed as a whole, would permit a reasonable person to make the finding made by the agency.* Further, the Administrative Procedures Act of 1969 (A.S.C.A. § 4.1001 et seq) establishes the general procedures that all A.S.G. departments, boards, and commissions must follow when empowered to act as agencies with rule-making or contested case decision-making authority.

The ALJ completely failed to perform her duties proscribed under the APA and local statutes. There was a flagrant violation of the plaintiff's constitutional rights. What the ALJ did in this particular case is a malicious abuse of process based on her following acts, decisions, judgments, rulings, and orders:

A. Erred in determining the correct legal issue; (B) Erred in denying leave of court or filing of the plaintiff's amended complaint and addendum to summary judgment; (C) Erred in denying the plaintiff's motion for judgment on the pleadings; (D) Erred in applying the correct legal standard; (E ) Misconstrued the application of TCRCP 15; (F) Circumvented the pleadings process to deny the plaintiff his right to back pay; (G) Failed to fully develop the record; (H) Conspired with the defendant to limit the scope of evidence; (I) The decision to deny the plaintiff's Motion for Summary

Judgment and Judgment on the Pleadings lacked substantial evidence or highly suspicious; (J) Exhibited Bias and Favoritism toward the defendant; (K) Erred in allowing the defendant to file an answer four months late to the plaintiff's amended complaint; (L) Conspired with the defendant to deny the plaintiff full discovery and attempted to coerce the prose plaintiff to go to trial; (M) Contributed to further violation of due process; (N) Failed to fully investigate and inquire more into the facts; (O) Aided and abetted fraud in covering the defendant's illegal employment practices; and (P) Unfair treatment of plaintiff due to his status as Prose.

B.  Violation of the Administrative Procedures Act

This case is unprecedented. It involves a substantial violation of the plaintiff's rights. In her Order on the plaintiff's Motion for Summary Judgment, the ALJ purposely hid the plaintiff's constitutionally property interest right to continued employment argument in the footnote of her decision. Then she lured the plaintiff into focusing on the erroneous "reclassification" legal issue and instead buried the plaintiff's "property interest right" in continuing employment argument in the footnote of the ruling. She also purposely upheld the defendant's argument against the filing of the plaintiff's "Addendum to Motion for Summary Judgment" which includes his property interest right in continuing employment. She reasoned that the plaintiff had failed to request leave of court. This allowed the ALJ to conveniently moot Michael White's and the DHR Director's fraudulent affidavits. After going through all that trouble hoping to mislead the plaintiff, the ALJ then allowed the plaintiff to File for Leave of Court and an Amended Complaint. But to her surprise, the plaintiff's "Amended Complaint" was identical to his "Addendum to Motion for Summary

Judgment" he had filed earlier. This left the ALJ irate. At this point, the ALJ then denied the plaintiff's Motion for Judgment on the Pleadings and approved his Amended Complaint and Motion for Leave of Court. The Motion for Judgment on the Pleadings was filed with approximately 90 exhibits to prove wrongful termination. Suspecting the ALJ would circumvent the proceedings again, the plaintiff filed a motion to supplement the record. During the hearing on the plaintiff's motion to supplement the record, the ALJ whispered to the defendant's attorney regarding a certain statute. She didn't say was it was but the plaintiff overheard the numbers she had called out and found out it pertained to the "new evidence" rule. This was her attempt to limit the scope of evidence. At this point, the ALJ had already changed the legal issue twice, still trying to manipulate the plaintiff. The ALJ had failed to ask the defendant essential foundational questions such as: Was there a performance evaluation, letters of reprimand, or warnings to corroborate the "unsatisfactory performance" reason for termination? Was there a statutorily required "recommendation letter for termination" to the DHR? The fact that she never asked these essential questions is an indication that she had willingly participated in these fraudulent acts. (**See Exhibit 13 of the Appellate Brief**). The ALJ must preserve as complete a record as possible for purposes of appeal under A.S.A.C. 4.0607. Moreover, she had never really fully explained the reasons or basis for her decisions. In 2021, shortly after Governor Lemanu took office as Governor of American Samoa the ALJ received a pay raise of about $50,000.00.

The ALJ should be sanctioned for her egregious acts.

3.  Misapplication of the Law

AMENDED CIVIL COMPLAINT - 29

The Trial Division of the High Court erred in denying the plaintiff's Extraordinary Writ of Mandamus. A writ of mandamus is an extraordinary writ and will not be issued unless:(1) the plaintiff has a plain right to have the act performed; (2) the defendant has a plain duty to perform it; and (3) there is no other adequate remedy available to the plaintiff. A petition for a writ of mandate is properly filed when a court abuses its discretion. The High Court of American Samoa is guided by the tenets and principles of equity in all matters within the court's jurisdiction.  The concept of equity is founded on the basic precepts of "common honesty, clear fairness, and good conscience." And where the law is inadequate, this court may utilize its equitable powers to contrive new remedies.

The plaintiff had a plain right of property interest in continuing employment which entitles him to restoration of his rights to backpay and associated benefits as a result of wrongful termination. The ALJ must immediately restore the petitioner's right or entitlement to backpay and associate benefits under provisions of the Administrative Procedures Act. There is no other alternative because the ALJ was determined to deny the plaintiff of his right to backpay as evidenced by her denial of the plaintiff's Motion for Summary Judgment where she intentionally left out the plaintiff's argument that he had property interest right in continued employment protected under the constitution. The DHR and the Attorney General's Office essentially conspired with the ALJ to deny the plaintiff his right to restoration of his back pay and employment benefits.

The Trial Division's decision to deny the plaintiff's Writ of Mandamus must be vacated.

4.  Abuse of Discretion and Misapplication of the Law by the Appellate Division

a. substantial violation of the petitioner's rights

AMENDED CIVIL COMPLAINT - 30

Under A.S.C.A. § 4.1044, this Court may reverse or modify the decision of the agency, or remand the case for further proceedings, if substantial rights of the petitioner have been prejudiced because the decision of the agency is: (1) in violation of applicable constitutional or statutory provisions; [2ASR3d15] (2) over the statutory authority of the agency; (3) made upon unlawful procedure;(4) affected by other errors of law;(5) erroneous given the reliable, probative, and substantial evidence in the whole record; and (6) arbitrary, capricious, or characterized by abuse of discretion.

This case is unprecedented. It is different from all the other interlocutory appeal cases. It involves a substantial violation of the plaintiff's rights. The defendant's actions were calculated, premeditated, and deliberate. It was designed to deny the plaintiff his right to back pay and employment benefits. The ASG's Department of Human Resources and the ALJ took advantage of the plaintiff's Pro Se status, hoping they could get away with deception and fraud. Having said this, all of the factors of A.S.C.A. § 4.1044 are met. The defendant violated the plaintiff's constitutionally protected property interest right in continued employment by failing to follow proper termination procedures. There was substantial evidence that the plaintiff's employment was wrongfully terminated. There was no statutory required recommendation letter, no performance evaluation, or letter of reprimand or warning to corroborate the reason for termination and the decision to terminate was arbitrary, capricious, and characterized by abuse of discretion.

b. "Final Decision" by the Office of the Administrative Law Judge

To invoke the Court's jurisdiction under the Administrative Procedures Act (APA) statute and Title 5 U.S.C. § 704, a plaintiff must challenge "agency action" that is "final."

'[A]gency action' includes the whole or a part of an agency rule, order, license, sanction,

AMENDED CIVIL COMPLAINT - 31

relief or the equivalent or denial thereof, or failure to act[.]" 5 U.S.C §551 (13). Agency action is "final" when two conditions are met: (1) "the action must mark the consummation of the agency's decision-making process—it must not be of a merely tentative or interlocutory nature"; and (2) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." Under collateral order doctrine, an "order must (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment." Id. Accordingly, an interlocutory order is appealable if it: (1) fully disposes of the question at issue;(2) resolves an issue completely collateral to the merits of the case; and (3) involves important rights that would be irreparably lost if the review had to await a final judgment.

What the ALJ did in this case constitutes a "final decision" by an agency. It was not tentative or interlocutory in nature. It was deliberate. As alluded to earlier, this case is unprecedented. The ALJ consummated its decision-making process when she denied the plaintiff's Motion for Summary Judgement in her ruling on March 23, 2022, and where she purposely left out the plaintiff's property interest right in continuing employment. Property interest rights entitle the plaintiff to the restoration of his back pay. Then the ALJ followed with the denial of the petitioner's Motion for Judgment on the Pleadings in her ruling on August 18, 2022. Both actions pretty much determined what the ALJ intended to do with the case. Every ruling, decision, action, or inaction by the ALJ that came after was proof of her pre-determined final decision to deny the petitioner his entitlement to backpay.

c. Collateral Order Doctrine

AMENDED CIVIL COMPLAINT - 32

Under the Collateral Order Doctrine, the ALJ's Order denying the plaintiff's Motion for Summary Judgement is separable from and collateral to the plaintiff's right to continued employment and entitlement to backpay and associated benefits. In the Trial Court Order denying the plaintiff's Writ of Mandamus, one of the judges did not sign the Order.

The Appellate Court's decision denying the plaintiff's interlocutory appeal must be reversed and vacated.

5.  Abuse of Power

The Appellate Court abused its power in refusing to hear oral arguments on the plaintiff's interlocutory appeal. Under ACRCP 34 it states "Oral argument will be allowed unless:1) the appeal is frivolous, or (2) the dispositive issue or set of issues has been recently authoritatively decided, or (3) the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument."

The Trial Division's Order was limited only to the plaintiff's Extraordinary Writ of Mandamus. It did not address the fact that the ALJ made a "final decision" and that the ALJ's decision in denying the plaintiff's Motion for Summary Judgment is collateral to the plaintiff's constitutional property interest right in continuing employment and right to backpay and associate benefits as a result of wrongful termination based on the Collateral Order Doctrine. The Appellate Court failed to address these two legal issues.

Further, the Chief Justice's Order denying the plaintiff's Interlocutory Appeal was a Memorandum to the Office of the Clerk. The Chief Justice acted alone without the panel in denying the plaintiff's interlocutory appeal. (**See Appellate Brief and Addendum to**

AMEND

**Interlocutory Appeal Filed in the Appellate Court and Motion to Correct Error to Preserve on Appeal filed in the Trial Court**) If the plaintiff hadn't called the High Court's Clerk's Office to follow up on the status of his interlocutory appeal and brief filed on August 10, 2023, he wouldn't have received a call back from the Clerk's Office, to come by the Office and pick up a copy of the Memorandum from the Chief Justice. The memorandum was addressed to the Clerk's Office and not the plaintiff. It was not a Notice of Hearing or Judgment based on the two legal issues stated earlier. The Appellate Court sandbagged the matter for approximately 8 months. The defendant had never filed a response to the plaintiff's appellate brief. Further, the plaintiff found it unusual that a Notice of Hearing could be served to the defendant without a set hearing date and time listed on the notice.

This Court must reverse and vacate the decision of the Appellate Court.

6. <u>Perjury</u>

   a. Local Statute 46.4605 states a person commits the crime of perjury if, to deceive, he knowingly testifies falsely or procures another to testify falsely to any material fact upon oath or affirmation legally administered, in any official proceeding before any court, the Legislature, or either House or a committee thereof, public body, notary public, or other officer authorized to administer oaths.

   Former Director of the Office of the Public Defender Michael White committed perjury when he produced a false affidavit to which he took an oath under notary public and filed it in court at the Office of the Administrative Law Judge in opposition to the plaintiff's Motion for Summary Judgment.

7. <u>False Declaration and False Affidavit</u>

AMENDED CIVIL COMPLAINT - 34

Local Statute 46.4606 False Affidavit: A person commits the crime of making a false affidavit if, with a purpose to mislead any person, he, in any affidavit, swears falsely to a fact which is material to the purpose for which the affidavit is made. Local Statute 46.4607 states a person commits the crime of making a false declaration if, to mislead a public servant in the performance of his duty: (1) he submits any written false statement which he does not believe to be true, and (2) submits or invites reliance on.

Michael White's affidavit filed at the OALJ on August 18, 2021, in opposition to the plaintiff's Motion for Summary Judgment, is infested with lies. (**EXHIBIT 12)** It was intended to mislead. For instance, in line # 6, it reads "In early April 2020 the FY2021 budget had not yet been prepared." The budget was of course submitted on May 1, 2021. In line #7, he also lied and said it was the petitioner who drafted the inter-agency letter. Further, the DHR Director Lynn Alaimalo's Affidavit filed with Michael White's Affidavit in opposition to the Motion for Summary Judgment was missing documents. It did not contain Michael White's so-called recommendation letter. And that's why the defendant's attorney at the time Julia Furlong motioned to have both documents Michael White's affidavit and DHR Lynn Alaimalo's affidavits stricken from the record. The ALJ conveniently mooted the filing of the affidavits after she altered the legal issue in her "Administrative Ruling" on the plaintiff's Motion for Summary Judgment.

8. Tampering with or fabricating physical evidence

A person commits the crime of tampering with or fabricating physical evidence if he:(1) alters, destroys, suppresses, or conceals any record, document, or thing with purpose to impair its verity, legibility, or availability in any official proceeding or investigation; or (2) makes, presents or uses any record, document, or thing knowing it to be false with

AMENDED CIVIL COMPLAINT - 35

purpose to mislead a public servant who is or may be engaged in any official proceeding or investigation. (b) Tampering with or fabricating physical evidence is a class D felony if the actor impairs or obstructs the prosecution or defense of a felony; otherwise tampering with or fabricating physical evidence is a class A misdemeanor.

The defendant, ASG, fabricated a second letter of termination dated May 3, 2021. The plaintiff did not receive a copy of such a letter. Further, the defendant ASG concealed the "recommendation letter" for two years which impaired or misled the judicial proceedings.

9. <u>Violation of local statutes American Samoa Code Annotated A.S.C.A and A.S.A.C</u>

The plaintiff's constitutional rights to property interest in continued employment and procedural protections are guaranteed under the 14th Amendment of the US Constitution and Article 1 Section 2 of the American Samoa Constitution. These rights are also grounded in local statutes and policies. Title 7 of the American Samoa Code Annotated (A.S.C.A) and Title 4 of the American Samoa Administrative Code (A.S.A.C) pertains to laws concerning Government Employees of the American Samoa Government. The American Samoa Government's (ASG) Policy and Administration Manual follows guidelines stipulated in the American Samoa Code Annotated and Administrative Code. The Administrative Procedures Act of 1969 (A.S.C.A. § 4.1001 et seq) establishes the general procedures that all A.S.G. departments, boards, and commissions must follow when empowered to act as agencies with rule-making or contested case decision-making authority.

The defendant essentially failed to adhere to local statutes and policy when terminating the plaintiff's employment. A.S.C.A § 7.0211 (c) states separation during the probationary period requires a recommendation in writing. A.S.C.A § 7.0803 (b) also

requires a recommendation letter when terminating career service employment. The

defendant withheld the recommendation letter from the plaintiff for 2 years which later

appeared to be a recommendation to "transfer" not "terminate" employment. This is a

flagrant violation of the plaintiff's constitutional rights. The defendant also violated the

Administrative Procedures Act by failing to follow the three-step administrative

procedure when terminating employment. And the decision to terminate was arbitrary

and capricious. The ALJ also violated A.S.C.A § 4.0607 when she failed to preserve a

completed record by failing to ask essential questions to develop the administrative

record.

10. Deprivation of Right to Procedural Due Process 42 U.S.C. § 1983

Title 42 U.S.C. 1983 states Every person who, under color of any statute, ordinance,

regulation, custom, or usage, of any State or Territory or the District of Columbia,

subjects, or causes to be subjected, any citizen of the United States or other person within

the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured

by the Constitution and laws, shall be liable to the party injured in an action at law, suit in

equity, or other proper proceedings for redress…. To establish a claim under § 1983, the

plaintiff must prove that the conduct complained of: (1) was committed by a person

acting under the color of state law, and (2) deprived the plaintiff of rights, privileges, or

immunities secured by the Constitution or laws of the United States. The Supreme Court

enumerated four prerequisites to asserting a "due process" claim: (1) The conduct

complained of must have been committed by a person acting *under color of State law;* (2)

There must be a constitutionally protected *property or liberty interest* in issue; (3) There

AMENDED CIVIL COMPLAINT - 37

must be a *deprivation* of this protected interest, and; (4) The deprivation of the protected interest must be *without `due process of law'*.

In the present case, the defendant willfully and intentionally deprived the petitioner of his constitutionally proper interest right in continued employment. The plaintiff was also denied adequate procedural protections stipulated under local statute American Samoa Administrative Code (Regulations) A.S.A.C, American Samoa Code Annotated A.S.C.A, Administrative Procedures Act, ASG Handbook, and in the ASG Policy and Administration Manual. The Trial and the Appellate Divisions of the American Samoa High Court intentionally denied the plaintiff's Writ of Mandamus and Interlocutory Appeal to protect the ALJ's egregious acts. This matter needs to be addressed by an "outside" court to avoid favoritism, bias, conflict of interest, etc.

11. Breach of Contract

To prevail on a breach-of-contract claim, the plaintiff must show (1) the formation of a contract, (2) the plaintiff's performance of any conditions precedent to its right to demand performance from the defendant, (3) the defendant's breach of contract, and (4) damages caused by the breach.

The petitioner's contract was converted to career service in 2020. As a career service employee, the petitioner is entitled to procedural protections and property interest rights guaranteed under the 5th and 14th Amendments to the US Constitution and Article 1 Section 2 of the American Samoa Constitution. These rights are grounded in local statutes and policy. Thus, the plaintiff's employment with the defendant is governed by the American Samoa Administrative Code A.S.A.C, American Samoa Code Annotated A.S.C.A, Administrative Procedures Act, ASG Handbook, and in the ASG Policy and

Administration Manual. The petitioner had already worked for the Office of the Public Defender for about 2 years. As a career service employee, the plaintiff is entitled to constitutionally procedural protections. The defendant, ASG, failed to follow the termination procedures stipulated in policy and local statute when terminating the plaintiff's employment on April 30, 2021. The defendant did not follow the statutory 3-part administrative termination procedure indicated in the APA and Policy. Further, there was no statutory letter of recommendation, letter of reprimand, or warning in the plaintiff's OFP filed to corroborate termination as required by the statute. The damages caused by the breach are loss of wages, social security, retirement, sick leave, annual leave, etc. In addition, the plaintiff is entitled to pain and suffering, punitive damages, compensatory damages, and other miscellaneous.

12. Breach of the covenant of good faith and fair dealing

The implied covenant requires a contracting party to "refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain.

Governor Lolo converted the plaintiff's contract to career service under conversion policy and local statute in June 2020. As a career service employee, the plaintiff was entitled to procedural protections and property interest rights to continued employment guaranteed under the 14th Amendment to the US Constitution and American Samoa Constitution Article 1 Section 2. These constitutional rights are grounded in local statutes and policy. The ASG's DHR essentially failed to follow guidelines indicated in local statutes such as the Administrative Procedures Act, American Samoa Code Annotated, American Samoa Administrative Code, ASG Handbook, and the ASG Policy and

AMENDED CIVIL COMPLAINT - 39

Administrative Manual. The defendant breached the covenant of good faith and fair dealing when Michael White retaliated by reducing the plaintiff's duties and responsibilities, working menial jobs, threatening to transfer the plaintiff, etc. Michael White also altered the plaintiff's salary without notice and lied to the plaintiff on several occasions. Moreover, the defendant failed to follow proper termination procedures stipulated in the ASG Policy and local law. The plaintiff is entitled to the same damages as in breach of contract.

13. Violation of the Government Tort Liability Act

Title 28 U.S.C. 1346 (b) establishes the jurisdiction of federal district courts to adjudicate cases of governmental tort liability under the Federal Tort Claims Act:[T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury . . . caused by the negligent or wrongful act or omission of any employee, of the Government while acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant by the law of the place where the act or omission occurred.

A.S.C.A. § 43.1204. requires the plaintiff to file an administrative claim with the attorney general before he may sue the government, the filing of such a claim begins an action and tolls the statute of limitations.

The plaintiff has already filed a claim with the Attorney General of American Samoa. The record is silent concerning any action on this claim, but it appears that almost two years have passed without there being a final disposition of the claim, and so, at the plaintiffs' option, it can be deemed denied by operation of law.

AMENDED CIVIL COMPLAINT - 40

### A. Fraud

To recover for fraud in American Samoa he must prove the following: (1) that there was a material representation of fact, (2) that the representation was false, (3) that the representation was made with the intent to deceive, (4) that the representation was relied on by the person complaining, (5) that the complainant had a right to rely on the representation, and (6) that the complainant was injured by his reliance.

There was a material representation of fact by the defendant that was false. It started when the plaintiff found out that his supervisor had lied about altering his salary. This was done without his knowledge. Then DHR Deputy Max Tuitele lied that Michael White had provided a statutory "recommendation letter" to the DHR. The DHR withheld this letter from the plaintiff for two years which later turned out to be a recommendation to "transfer" not to "terminate" employment." The plaintiff relied on this false representation. As an ASG employee, the plaintiff had a property interest right in his employment, compensation, and benefits. The plaintiff was injured because he lost his employment and entitlement to backpay and employment benefits.

### B. Intentional Infliction of Emotional Distress

American Samoa adopts the portion of Section 46 of the Restatement of Torts, Second, that is necessary to resolve the dispute in this case. Namely: *One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.*

The defendant's extreme and outrageous conduct in failing to follow proper termination procedures, concealing evidence, giving false or misleading information,

AMENDED CIVIL COMPLAINT - 41

and circumventing the judicial proceedings in favor of the defendant has caused the plaintiff severe emotional distress. This case is approaching three years of litigation. The defendant's actions were intended to deny the plaintiff of his entitlement to backpay and employment benefits. The plaintiff has a young family of three children ages 9, 7, and 2 at the time. After termination, the plaintiff's wife left for the States with their youngest child. The plaintiff was left scrambling to look for a job and struggling to provide for his children. The plaintiff also defaulted on his loan. The plaintiff suffered depression, embarrassment, and several emotional distress. The plaintiff is embarrassed to go see a doctor about his mental health caused by wrongful termination.

## VI. RELIEF SOUGHT

WHEREFORE, Plaintiff prayerfully requests this Court, under Title 42 U.S.C. §1983, and to the Court's equitable powers to:

(1) Enter judgment against Defendant and in favor of Plaintiff for each violation alleged in this complaint;

(2) Permanently enjoin the defendant from further violating the plaintiff's constitutional rights by delaying his entitlement or right to backpay and associated benefits;

(3) Enter judgment granting immediate restoration of the plaintiff's back pay of approximately $35,000.00 in salary and employment benefits including, sick leave, annual leave accrual, social security, and retirement at approximately $7,000.00;

(4) Enter judgment awarding the plaintiff relief for the following:

    a.  Punitive damages

AMENDED CIVIL COMPLAINT - 42

What the defendant did was egregious and without any remorse. It was premeditated and unprecedented. It involves several individuals committing egregious acts. Perhaps the biggest concern is how long has the defendant been manipulating the judicial process in their favor. This Court must send a clear message to deter the defendant and others from engaging in conduct similar to that which formed the basis of the lawsuit. The plaintiff is asking for $100,000.00 in punitive damages in all claims. This is more so to punish the defendant for their egregious acts.

b.  Pain and suffering

The case severely damaged the plaintiff's marriage and family. The plaintiff's wife and his three sons ages 9, 7, and 2 at the time relied on the plaintiff's income. Shortly after the plaintiff's employment was wrongfully terminated, his wife left with their youngest son to the mainland for two years without discussing it with the plaintiff. She couldn't bear the pain of not having income to provide for their children. The plaintiff was left alone to care for his other two sons and also struggled to look for a job for almost a year. The plaintiff had just taken out a loan for a car and was struggling to provide for his sons and make payments. The marriage hasn't been the same since the separation. The plaintiff also has a delinquent status on his credit report for failure to make on-time payments or none toward the car loan. This predicament has caused the plaintiff embarrassment, depression, and stress. The plaintiff is asking $100,000.00 for pain and suffering concerning all claims.

c.  Miscellaneous

All other expenses incurred over three years of litigation (i.e. printing costs, vehicle gas, wear and tear on the vehicle, time spent away from family to focus on the case, etc). The plaintiff is asking $15,000.00.

d.  This brings the total to $257,000.00 of monies owed to the plaintiff for damages and rights to restoration of back pay and employment benefits.

5.  Vacate the High Court of American Samoa's Trial Division's Order denying the plaintiff's Writ of Mandamus.

6.  Reverse the High Court of American Samoa's Appellate Division's Order denying the plaintiff's Interlocutory Appeal of the Office of the Administrative Law Judge's "final decision." Remand with Order for immediate restoration of rights to back pay and employment benefits and damages incurred.

7.  Award Plaintiff such additional relief as the Court may deem just and proper.

## VII.  CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related

AMENDED CIVIL COMPLAINT - 44

papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: _____May 3,_____, 20_24_.

_____
ProSe Plaintiff, Mr. Launa  en Alefosio

AMENDED CIVIL COMPLAINT - 45